**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

HISTORY ASSOCIATES INCORPORATED,
7361 Calhoun Place, Suite 310
Rockville, MD 20855,

           Plaintiff,

    v.

U.S. SECURITIES AND EXCHANGE
COMMISSION,
100 F Street NE
Washington, D.C. 20549,

           Defendant.

Case No. 1:24-cv-1858

## COMPLAINT

Coinbase, Inc., the largest digital-asset trading platform in the United States, retained History Associates Incorporated to submit Freedom of Information Act ("FOIA") requests seeking information about certain digital-asset-related investigations and enforcement actions initiated by the Securities and Exchange Commission ("SEC" or "Commission"). The SEC denied those requests. History Associates now brings this action against the Commission to compel compliance with FOIA.

## INTRODUCTION

1. For years, the SEC has refused to articulate a consistent or coherent view on the securities laws' application to digital assets.

2. The agency's latest position—that it has sweeping authority over the vibrant and rapidly expanding digital-asset industry—has no basis in the securities laws and has never coherently been explained by the agency. Instead, the SEC has waged a scorched-earth

enforcement war on digital-asset firms that, in conjunction with efforts by other financial regulators to de-bank crypto firms, is designed to cripple the digital-asset industry.

3.     Despite repeated entreaties from regulated parties, the SEC has refused to explain (through rulemaking or otherwise) which digital assets it now believes are subject to the securities laws or how digital-asset firms could possibly comply with its existing, inapt rules.  It has not explained the contradictory congressional testimony of its Chair, who declared scarcely three years ago that the agency lacks authority to regulate digital-asset exchanges like Coinbase.  It has refused to modify its rules to make them workable for digital-asset firms.  And it has claimed that it need not even *allow* the $2 trillion digital-asset industry to comply with its existing rules.

4.     This is not regulation.  It is a purposeful effort to destroy an industry by demanding the impossible and prosecuting companies that fail to achieve it.  The SEC's new, opaque, and shifting view of the securities laws deprives regulated parties of the fair notice demanded by due process, leaving them to guess whether the SEC might view their activities as securities transactions and decide to subject them to investigation, prosecution, and backward-looking penalties.  This uncertainty is forcing entrepreneurs to move their digital-asset businesses abroad.

5.     The Freedom of Information Act was made to address problems like these.  Congress enacted FOIA "to open agency action to the light of public scrutiny," *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1989), and to "ensure an informed citizenry, vital to the functioning of a democratic society," *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989).

6.     Seeking to enforce FOIA's check on administrative opacity, Coinbase retained Plaintiff History Associates to request that the SEC provide records concerning three SEC investigations into digital-asset firms and entrepreneurs—with the goal of divining how the SEC

views its newfound, sweeping, and unlawful authority.  One of those investigations focused on Ether—the digital asset used in Ethereum—which the SEC publicly announced is not a security in 2018.  That investigation was recently closed by the agency, and the other two investigations have been closed for years.  Yet the SEC withheld nearly all responsive records based on boilerplate assertions that these cold cases might relate to some unspecified, ongoing investigations.  Those refusals violated the SEC's FOIA obligations.

7.    History Associates requests that this Court compel the SEC to comply with FOIA.

## THE PARTIES

8.    Plaintiff History Associates Incorporated is a nationally recognized research and analysis consultancy with expertise in obtaining records through federal FOIA requests, state and local Freedom of Information Law requests, and other sunshine laws.

9.    Defendant the SEC is an agency of the federal government within the meaning of FOIA, 5 U.S.C. § 552(f), and is in possession or control of the agency records sought here.

## RELATED PARTIES

10.    Coinbase, Inc. is the largest and only publicly traded digital-asset trading platform in the United States.  It is also a leading provider of financial infrastructure and technology for the crypto economy.

## JURISDICTION AND VENUE

11.    This Court has jurisdiction over this action under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

12.    Venue is proper in this District under 5 U.S.C. § 552(a)(4)(B), which allows a FOIA suit to be brought in "the district court of the United States … in the District of Columbia."  Venue is also proper under 28 U.S.C. § 1391(e) because the SEC resides in the District of Columbia.

## BACKGROUND

**A.    With Coinbase's Help, Digital Assets Have Grown Into A Transformative, Multi-Trillion-Dollar Industry**

13.    Digital assets (also known as "cryptocurrencies," "crypto assets," or "tokens") are computer code entries recorded on a blockchain.  A blockchain is a public ledger that records digital-asset transactions on the Internet so that they can be viewed and verified by anyone with an Internet connection.  A blockchain is typically decentralized, meaning that no single person or entity operates it.

14.    Bitcoin was the first blockchain and digital asset, invented in 2008.  Many other blockchains and digital assets, such as Ethereum, have been created since, with capabilities well beyond peer-to-peer transfers.  For example, some digital assets serve as a medium for exchange on applications, function as a digital currency, or help secure digital networks.

15.    Digital assets are now a mainstream part of global financial markets, with a market capitalization of around $2 trillion and hundreds of millions of users around the world.

16.    Coinbase is the largest and only publicly traded digital-asset trading platform in the United States, serving millions of Americans.  It was founded in 2012 to bring economic freedom worldwide by creating a more open, inclusive, and efficient financial system leveraging digital assets and blockchain technology.  *See* Brian Armstrong, *Coinbase Is a Mission Focused Company*, Coinbase Blog (Sept. 27, 2020), https://tinyurl.com/2jcmcsxe.

17.    Since its founding, Coinbase has been an industry leader in compliance and regulator engagement.  Coinbase has been registered as a money-services business with the Financial Crimes Enforcement Network (FinCEN) since 2013; is a member of the federal Bank Secrecy Act Advisory Group; is licensed by the New York Department of Financial Services; and is authorized to transmit money in dozens of States.  Coinbase is also a critical partner to law-

enforcement agencies around the world, having trained thousands of law-enforcement agents and analysts in blockchain analytics and other cutting-edge investigative techniques.

**B.      The SEC Has Refused To Articulate Any Consistent, Coherent View Of The Securities Laws' Application To Digital Assets**

18.     The SEC has never provided clear or consistent guidance on how, in its view, the securities laws apply to digital assets.

**1.      The SEC Abruptly Changed Its Position On How The Securities Laws Apply To Digital Assets**

19.     For years, the SEC stated that it had at most only limited authority over digital assets.  In 2018, for example, the SEC's then-Director of Corporation Finance publicly stated that a digital asset "all by itself is *not* a security."  William Hinman, Dir., Div. of Corp. Fin., SEC, *Digital Asset Transactions: When Howey Met Gary (Plastic)* (June 14, 2018), https://tinyurl.com/5n94tj64 (emphasis added).

20.     And in May 2021, the current SEC Chair testified before Congress that "the exchanges trading in these crypto assets do not have a regulatory framework either at the SEC, or our sister agency, the Commodity Futures Trading Commission."  "[O]nly Congress," he said, "could really address" that issue.  *Game Stopped? Who Wins and Loses When Short Sellers, Social Media, and Retail Investors Collide, Part III*, 117th Cong. 1, 12 (May 6, 2021), https://tinyurl.com/mu2ntff9.

21.     The SEC's actions evidenced the same understanding.  In April 2021, the SEC cleared the way for Coinbase to become a public company after reviewing and commenting on Coinbase's business model without ever suggesting that Coinbase needed to register with the SEC.  SEC, *Correspondence Related to Draft Registration Statement* at 4 (Dec. 7, 2020), https://tinyurl.com/5n6f375n.

22.     The SEC then abruptly changed its position.  In 2022, the SEC Chair told a reporter that, notwithstanding his prior testimony to Congress, he "feel[s]" that the SEC "ha[s] enough authority … in this space" to require digital-asset companies "to come into compliance" with the SEC's registration requirements.  *SEC's Gensler: The 'Runway Is Getting Shorter' for Non-Compliant Crypto Firms*, Yahoo! Finance (Dec. 7, 2022), https://tinyurl.com/rmcww8x5.

23.     And the Chair now repeatedly contends that "Congress gave [the SEC] a broad framework … to regulate exchanges," and regularly asserts that the "vast majority" of digital assets "*are* securities."  Gary Gensler, SEC Chair, *Partners of Honest Business and Prosecutors of Dishonesty* (Oct. 25, 2023), https://tinyurl.com/y698vevv; Gary Gensler, SEC Chair, *Prepared Remarks of Gary Gensler on Crypto Markets, Penn Law Capital Markets Association Annual Conference* (Apr. 4, 2022), https://tinyurl.com/5557uxbf (emphasis added).

24.     But the SEC has never coherently explained *which* digital assets it believes to be subject to the securities laws or *how* it reads the securities laws to encompass many digital assets but not a wide array of assets that have never before been subject to SEC jurisdiction, including real estate, commodities, and trading cards.

25.     The SEC's reversal and its inability to articulate its novel position has resulted in a slew of contradictions, reflected (in part) in the following chart:

| Issue | Examples Of The SEC's Conflicting Statements | | | |
|---|---|---|---|---|
| Is a digital asset a security? | **No (2018)**: A digital asset "all by itself is *not* a security."[1] | **Yes (2021)**: A digital asset "embodi[es]" and "represents th[e] investment contract."[2] | **No (2024)**: A digital asset is just "computer code."[3] | **Yes (2024, five days later)**: The digital asset itself "represents the investment contract."[4] |
| Can the SEC regulate digital asset exchanges? | **No (2021)**: "Right now, there is not a market regulator [for] crypto exchanges."[5] | | **Yes (2022)**: "Congress gave us a broad framework … to regulate exchanges."[6] | |
| Is existing law clear? | **No (2020)**: There is "no certainty" about whether digital assets are securities.[7] | | **Yes (2023)**: "We have a clear regulatory framework built up over 90 years."[8] | |

> **2. The SEC's Repeated Swerves On Ether Epitomize Its Incoherent And Unpredictable Approach**

26.     The opaque and contradictory nature of the SEC's approach towards digital assets has been at its apex as applied to Ether ("ETH"), which is used on the second-most-prominent blockchain, Ethereum.

27.     In 2018, the SEC publicly announced that ETH is *not* a security.  *See* Hinman, *When Howey Met Gary*, *supra* ("current offers and sale of Ether are not securities transactions").

---

[1] Hinman, *When Howey Met Gary*, *supra* (emphasis added).

[2] Opp. to Mot. to Intervene at 24, *SEC v. Ripple Labs, Inc.*, No. 20-cv-10832 (S.D.N.Y. May 3, 2021), ECF 153 (emphasis omitted).

[3] Tr. at 18:23, *SEC v. Payward, Inc.*, No. 23-cv-06003 (N.D. Cal. Feb. 22, 2024), ECF 26-1.

[4] Tr. at 92:14-15, *Payward*, No. 23-cv-06003 (N.D. Cal. Feb. 22, 2024), ECF 26-2.

[5] Gensler, *Game Stopped?*, *supra*.

[6] Gensler, *Penn Law Capital Markets*, *supra*.

[7] SEC, *Correspondence Related to Draft Registration Statement*, *supra*.

[8] *Oversight of the Securities and Exchange Commission* at 4:12:30-58, 118th Cong., 1st Sess. (Apr. 18, 2023), https://tinyurl.com/3pf7d9xu.

28.     The Commodity Futures Trading Commission agreed, stating "that [E]ther is a commodity and therefore would fall under our jurisdiction."  Heath P. Tarbert, Chairman, CFTC, *Interview with Yahoo! Finance's Scott Gamm* (Oct. 10, 2019), https://tinyurl.com/yc25z9c3.

29.     Based on that regulatory consensus, Coinbase and the rest of the digital-asset industry built products and services and made significant investments into the Ethereum network on the premise that ETH is not a security.

30.     As he began developing his new sweeping view of his authority over digital assets, however, the current SEC Chair started to backtrack—casting significant doubt on ETH's status. During congressional testimony in early 2023, for example, the Chair refused to answer repeated questions from the Chair of the House Financial Services Committee asking whether ETH is a security.  *See, e.g.*, Nikhilesh De, *SEC Chair Gensler Declines to Say If Ether Is a Security in Contentious Congressional Hearing*, CoinDesk (Apr. 19, 2023), https://tinyurl.com/4ymm27f4.

31.     Days before that testimony, and without any public announcement, the SEC approved a Formal Order of Investigation in the matter of "Ethereum 2.0" that was premised on the SEC's changed and conflicting view that ETH might be a security.  Soon after approving the order, the SEC issued a wave of subpoenas to entities associated with Ethereum.

32.     The resulting uncertainty was so debilitating that some industry participants sued the SEC seeking declaratory relief on ETH's status.  *See, e.g.*, Compl., *Consensys Software Inc. v. Gensler*, No. 24-cv-00369 (N.D. Tex. Apr. 25, 2024).

33.     In recent months, however, the SEC has changed course yet again.  The SEC approved spot ETH ETFs, which appears to confirm the agency's earlier view that ETH is *not* a security.  And in June 2024, without any explanation and without purporting to have changed its understanding of the securities laws, the SEC announced in a private letter to an investigative target

that it had "concluded the investigation" titled "In the Matter of Ethereum 2.0."  SEC Termination Letter (June 18, 2024), https://tinyurl.com/2a97z4yt.

### C.   The SEC's Aggressive New Approach Is Part Of A Government-Wide War On The Digital-Asset Industry

34.     The SEC has never adopted or explained any of its positions through notice-and-comment rulemaking.  Instead, the SEC Chair maintains that the "rules have already been published," that there's a "clear way" to register, and that digital-asset companies must "come in and register" or face "enforcement."  Brian Quarmby, *SEC Chair Gensler Claps Back at Coinbase, Says Crypto Rules Already Exist*, CoinTelegraph (May 16, 2023), https://bit.ly/458mHb2; *First on CNBC: CNBC Transcript: SEC Chair Gary Gensler Speaks with CNBC's "Squawk Box" Today*, CNBC (Feb. 10, 2023), https://tinyurl.com/4hte622t.

35.     True to the Commission's "submit or else" threats, the SEC has filed a barrage of backward-looking enforcement actions against digital-asset firms—including Coinbase—seeking punitive fines for purported failures to comply with the SEC's regulations.  Some of the Commission's own members have aptly described the enforcement campaign as a "scorched earth" strategy.  Hester M. Peirce, Comm'r, SEC, *Overdue: Statement of Dissent on LBRY* (Oct. 27, 2023), https://tinyurl.com/22hut69z.

36.     In reality, the SEC's campaign of "regulation by enforcement" is not intended to regulate the digital-asset industry.  It is designed to destroy it.

37.     The SEC's enforcement activity is ostensibly premised on the proposition that digital-asset firms can "come in and register" with the agency.  Yet, as Coinbase and others have repeatedly explained to the SEC in face-to-face meetings, petitions for rulemaking, and multiple lawsuits, digital-asset firms simply cannot comply with existing rules designed decades ago for legacy financial instruments.

38.     At the most basic level, if many digital assets were registered as securities, they could not function.  All digital-asset transactions would have to be routed through a broker-dealer on a registered exchange, subjecting them to clearing and settlement rules that would not permit the real-time uses for which the assets are designed.  Digital-asset firms also are unable to comply with registration and disclosure requirements designed for legacy financial instruments managed by centralized companies, rather than for digital assets operating on decentralized blockchains. *See* Coinbase Brief at 40-46, *Coinbase, Inc. v. SEC*, No. 23-3202 (3d Cir. Mar. 11, 2024).

39.     The SEC has never explained how compliance is possible.  And when pressed to do so by Coinbase in a rulemaking petition and multiple lawsuits, the SEC has demurred and disclaimed any duty to create a path to compliance *at all*.  Instead, in the agency's view, it can impose rules it knows a $2 trillion industry cannot satisfy and thereby drive the industry into the ground.  *See* SEC Brief at 34, *Coinbase*, No. 23-3202 (3d Cir. May 10, 2024) (arguing it is irrelevant whether "this new industry *can* comply with the existing regulatory framework" (quotation marks omitted)).

40.     The SEC's own Commissioners have described the agency's digital-asset-related initiatives as efforts "to block access to crypto as an asset class," and to "welcome extinction of new technology."  Mark. T. Uyeda, SEC, *Statement on Proposed Rule Regarding the Safeguarding of Advisory Client Assets* (Feb. 15, 2023), https://tinyurl.com/2ztdcxx5; Hester M. Peirce, Comm'r, SEC, *Rendering Innovation Kaput: Statement on Amending the Definition of Exchange* (Apr. 14, 2023), https://tinyurl.com/4v7hvwae.

41.     The SEC's enforcement campaign is just one aspect of a broader government-wide war on digital assets.  Alongside the SEC, other federal financial regulators have engaged in a coordinated effort to cut off the digital-asset industry from the banking sector.

42.     The FDIC has issued letters to banks instructing them to indefinitely "pause all crypto-asset related activities"—a move that the agency's own Office of Inspector General has criticized.   OIG, *FDIC Strategies Related to Crypto-Asset Risks* 11 (Oct. 2023), https://tinyurl.com/yckf73f2.

43.     The Federal Reserve issued guidance effectively prohibiting state member banks from holding digital assets on their own accounts and from issuing crypto tokens.  Federal Reserve, *Policy Statement on Section 9(13) of the Federal Reserve Act*, 88 Fed. Reg. 7848 (Feb. 7, 2023).

44.     Even the SEC—a securities regulator—issued Staff Accounting Bulletin No. 121 ("SAB 121"), 87 Fed. Reg. 21,015 (Apr. 11, 2022), which makes it prohibitively expensive for financial institutions to hold digital assets on their balance sheets.  Bipartisan majorities of both Houses of Congress recently voted to overturn SAB 121 under the Congressional Review Act, but the President vetoed the legislation.

### D.     FOIA Requires Disclosure Of Government Records

45.     The SEC's effort to destroy the digital-asset industry by adopting and enforcing a new view of its jurisdiction over digital assets—while refusing to explain and test that view through notice-and-comment rulemaking—exceeds the agency's authority under the securities laws, violates fundamental due-process principles of fair notice, and flouts the Administrative Procedure Act.

46.     Yet the industry has been left with little way to understand the SEC's sweeping and ill-defined power grab.  Instead it has been left to guess at why the SEC thinks it has the power it is asserting, and what the SEC sees as the outer limits of that jurisdiction.

47.     FOIA was designed to help counteract this kind of a government in the shadows.

48.     Congress enacted FOIA "to open agency action to the light of public scrutiny," *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1989), and to "ensure an informed citizenry,

vital to the functioning of a democratic society," *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989).  FOIA ensures the transparency and accountability "needed" to "hold the governors accountable to the governed." *John Doe Agency*, 493 U.S. at 152.

49.     To that end, unless one of nine limited exemptions applies, FOIA requires that federal agencies release information to the public on request.  5 U.S.C. § 552(a)(3)(A).

50.     Even if a record falls within a FOIA exemption, the agency still must disclose it unless "the agency reasonably foresees that disclosure would harm an interest protected by [the] exemption."  5 U.S.C. § 552(a)(8)(A)(i).  Moreover, when only portions of a record are exempt, the agency is required to "take reasonable steps necessary to segregate and release nonexempt information." *Id.* § 552(a)(8)(A)(ii); *see also id.* § 552(b).

51.     Within 20 business days of an agency's receipt of a FOIA request, the agency must "determine … whether to comply" with the request.  5 U.S.C. § 552(a)(6)(A)(i).  The agency must "immediately notify" the requester of "such determination and the reasons therefor," as well as "the right … to appeal to the head of the agency" any "adverse determination." *Id.*  If an agency determines that it will comply with the request, it must "promptly" release responsive, non-exempt records to the requestor. *Id.* § 552(a)(6)(C)(i).

52.     When an agency violates FOIA, federal courts have the power and obligation to correct the agency's unlawful action—and to ensure the accountability and transparency demanded by Congress.  They do so by reviewing the agency's decision de novo and "order[ing] the production of any agency records improperly withheld."  5 U.S.C. § 552(a)(4)(B).  This judicial review makes FOIA more than empty parchment:  It empowers and directs courts to hold agencies to Congress's mandate and to protect the "public right to secure such information from … unwilling officials' hands." *John Doe Agency*, 493 U.S. at 151.

**E.      History Associates Seeks To Understand The SEC's Positions On The Securities Laws, But The SEC Unlawfully Denies History Associates' FOIA Requests**

53.      To try to shed light on the SEC's understanding of how the securities laws apply to digital assets, Coinbase hired History Associates, a nationally recognized expert in obtaining records through federal FOIA requests, to submit FOIA requests to the SEC.

**1.      The SEC Denies History Associates' Request Related To Ethereum**

54.      History Associates' first FOIA request sought documents related to the SEC's views on Ethereum and the status of ETH.

55.      On July 28, 2023, History Associates submitted a FOIA request seeking "access to and copies of all records concerning Ethereum's shift to a proof-of-stake consensus mechanism that have been created since January 1, 2018, including, but not limited to": (a) "external communications," (b) "factual or investigatory documents," and (c) "public communications."

56.      On October 18, 2023, the SEC denied History Associates' request.  The SEC responded that it "conducted a thorough search of the SEC's various systems of records, but did not locate or identify any information responsive to [the] request."

57.      Consistent with the SEC's FOIA regulations, History Associates appealed that decision on January 16, 2024, contesting the adequacy of the SEC's search.

58.      On February 5, 2024, the SEC denied History Associates' appeal.  The SEC acknowledged that "there are responsive records that the FOIA Office failed to identify."  But the SEC asserted that the "records … are protected from disclosure pursuant to FOIA Exemption 7(A)."

59.      The SEC recognized that Exemption 7(A) applies only when: (1) a law-enforcement proceeding is "pending or prospective," and (2) release of the information could "reasonably be expected to cause some articulable harm."  But the SEC stated that the

Ethereum 2.0 investigation "is still active and ongoing" and that "the documents [sought] come within categories whose disclosure could be reasonably expected to cause harm to the ongoing and active enforcement proceedings" and the "underlying investigation."   The SEC also made a conclusory determination that "it is reasonably foreseeable that disclosure of the withheld records would harm interests protected by Exemption 7(A) because such a disclosure could compromise enforcement proceedings."

60.     In June 2024, however, the SEC closed the Ethereum 2.0 investigation.

**2.      The SEC Denies History Associates' Requests Related To The Zachary Coburn And Enigma MPC Investigations**

61.     History Associates also sought records related to two long-closed SEC investigations: one involving Zachary Coburn, an individual who settled digital-asset-related claims with the SEC in 2018; and Enigma MPC, a digital-asset firm that settled digital-asset-related claims with the SEC in 2020.

62.     On August 8, 2023, History Associates submitted a FOIA request seeking records "reflecting or concerning any investigations" involving "Enigma MPC" and "Zachary Coburn." The request sought "access to and copies of all records, including all investigative files and any other factual documents received by [the SEC] or otherwise in the [SEC's] custody or control, or any internal or external communications reflecting or concerning" the investigations.

63.     On August 11, 2023, the SEC denied History Associates' request as to Zachary Coburn.  On October 5, 2023, the SEC provided three pages of redacted documents responsive to the Enigma MPC request, but otherwise denied the request.  Using materially identical language for both denials, the SEC stated that it was "withholding records that may be responsive to [the] request[s] under" Exemption 7(A), the same law-enforcement exemption it asserted for the Ethereum request.

64.     History Associates appealed both decisions.  History Associates explained that Exemption 7(A) does not apply because SEC records demonstrate that proceedings against Zachary Coburn and Enigma MPC have been completed for years.  *See In re Coburn*, Release No. 84553 (Nov. 8, 2018) (noting that Coburn had "submitted an Offer of Settlement," which the Commission accepted, and Coburn "consent[ed] to the entry of this Order"); *In re Enigma MPC*, Release No. 10755 (Feb. 19, 2020) (noting that Enigma MPC had "submitted an Offer of Settlement," which the Commission accepted, and Enigma MPC "consent[ed] to the entry of this Order").  Thus, History Associates explained, "there is no potential interference with law enforcement activities to support the invocation of Exemption 7A."

65.     On December 5, 2023, the SEC affirmed the denial of the request for Zachary Coburn's investigative records.  The agency explained that, "[a]lthough the Commission entered into a settlement with Mr. Coburn in November 2018," the "underlying investigation from which you seek records is still active and ongoing as Enforcement staff investigate whether the Commission should bring an enforcement action against other entities for similar violations of federal securities laws."

66.     On January 23, 2024, the SEC affirmed the denial of the request for Enigma MPC's investigative records.  It again asserted that, even though the "enforcement proceeding" against Enigma MPC was "no longer active," releasing the records sought "could reasonably be expected to interfere with related on-going and active enforcement proceedings."

67.     For both requests, the SEC also determined that disclosure "could be reasonably expected to cause harm to the related, ongoing and active enforcement proceedings."  Additionally, the SEC made conclusory findings that "partial disclosure" "would not be consistent with the purposes of Exemption 7(A)" and that "it is reasonably foreseeable that disclosure of the withheld

records would harm interests protected by Exemption 7(A) because such a disclosure could compromise enforcement proceedings."

68.     The SEC's rationale for withholding documents from investigations that concluded in settlements years ago is tailor-made to frustrate the legitimate purposes for which Coinbase sought the Coburn and Enigma MPC documents in the first place—to understand the view of the law that underlies the SEC's enforcement blitzkrieg against the digital-asset industry.  The SEC's stonewalling violates its FOIA obligations.

69.     Having exhausted its administrative options, History Associates files this suit to compel the SEC to comply with its FOIA obligations.

## COUNT I
### Violation of FOIA, 5 U.S.C. § 552

70.     History Associates incorporates the allegations in the foregoing paragraphs.

71.     The SEC is an agency of the federal government within the meaning of 5 U.S.C. § 552(f)(1).

72.     History Associates' FOIA requests sought records within the meaning of 5 U.S.C. § 552(f)(2).

73.     The SEC violated its statutory duty under 5 U.S.C. § 552(a) by withholding the requested records because they are not exempt from disclosure and because, at a minimum, the SEC could segregate portions that are not exempt from disclosure.

74.     FOIA was designed "to open agency action to the light of public scrutiny."  *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1989).  Its purpose is "to provide for open disclosure of public information, and it has long been understood to create a strong presumption

in favor of disclosure." *Pub. Citizen, Inc. v. Rubber Mfrs. Ass'n*, 533 F.3d 810, 813 (D.C. Cir. 2008) (citations and quotation marks omitted).

75.    Although disclosure obligations under FOIA are subject to certain exemptions, in light of FOIA's "goal of broad disclosure, these exemptions have been consistently given a narrow compass." *Tax Analysts*, 492 U.S. at 151; *see also Pub. Citizen*, 533 F.3d at 812.

76.    The SEC upheld in administrative appeals the withholding of records responsive to History Associates' FOIA requests under Exemption 7(A), but that exemption does not apply. Exemption 7(A) applies only if the SEC can "demonstrate that disclosure (1) could reasonably be expected to interfere with (2) enforcement proceedings that are (3) pending or reasonably anticipated." *CREW v. U.S. Dep't of Justice*, 746 F.3d 1082, 1096 (D.C. Cir. 2014) (quotation marks omitted).   Exemption 7(A) thus "allow[s] disclosure of closed investigative files." *Ehringhaus v. FTC*, 525 F. Supp. 21, 23 (D.D.C. 1980).

77.    Here, all three of the relevant investigations—Ethereum, Zachary Coburn, and Enigma MPC—are now closed.  Although the SEC has claimed that disclosing records regarding these closed investigations could interfere with other related and ongoing investigations, the SEC has not explained how those other investigations are related or what interference would result from disclosing the requested records.  Moreover, History Associates requested more than investigative records, including public and external communications.

78.    Even if the requested records did contain some information falling within Exemption 7(A), FOIA requires the agency to produce any "reasonably segregable," non-exempt portion of the records through appropriate redactions.  5 U.S.C. § 552(b).  The SEC's "blanket declaration" that segregation or partial disclosure was not possible "does not constitute a sufficient

explanation of non-segregability." *Wilderness Soc'y. v. U.S. Dep't of Interior*, 344 F. Supp. 2d 1, 19 (D.D.C. 2004).

79.     In addition, even if the requested records fell entirely within Exemption 7(A), the SEC still must release them if doing so "would not reasonably harm an exemption-protected interest and if its disclosure is not prohibited by law." *Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.*, 436 F. Supp. 3d 90, 105-06 (D.D.C. 2019).

80.     The SEC's conclusory assertions that releasing the requested records would harm other unspecified investigations does not satisfy FOIA's "meaningful burden" of "describing" "the nature of the harm and the link between the specified harm and specific information contained in the material withheld." *Ctr. for Investigative Reporting*, 436 F. Supp. 3d at 105-06.  In truth, the agency's stonewalling of History Associates' requests is part and parcel of its effort to keep digital-asset firms and the public in the dark about the agency's confused view of its regulatory power, even as it uses that purported power to wage a no-holds-barred enforcement campaign against digital-asset firms in court.

81.     History Associates has exhausted its administrative remedies by appealing the SEC's adverse determinations.  5 U.S.C. § 552(a)(6)(A)(ii).

82.     By failing to release the requested records, the SEC has violated FOIA. 5 U.S.C.  § 552(a)(3)(A).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court award the following relief:

a.  Declare that the records responsive to History Associates' requests, or a reasonably segregable portion of those records, must be disclosed under 5 U.S.C. § 552;

b.  Declare that the SEC violated FOIA by failing to produce the requested records and by failing to reasonably segregate and produce to History Associates any non-exempt portions of the responsive records;

c.  Order the SEC to produce by a date certain the responsive records or reasonably
segregable portions of them;

d.  Order the SEC to produce a *Vaughn* index of any responsive records or portions of
responsive records withheld under a claim of exemption;

e.  Retain jurisdiction over this case to ensure the SEC's timely compliance with this
Court's orders;

f.  Award History Associates its costs and attorneys' fees incurred in this action in
accordance with 5 U.S.C. § 552(a)(4)(E); and

g.  Grant such other relief as this Court may deem just and proper.


Date: June 27, 2024                        Respectfully submitted,

                                           /s/ *Eugene Scalia*
                                           Eugene Scalia, D.C. Bar No. 447524
                                           Jonathan C. Bond, D.C. Bar No. 1003728
                                           Nick Harper, D.C. Bar No. 144707
                                           Aaron Hauptman, D.C. Bar No. 173552
                                           GIBSON, DUNN & CRUTCHER LLP
                                           1050 Connecticut Avenue, N.W.
                                           Washington, D.C. 20036
                                           (202) 955-5800
                                           escalia@gibsondunn.com
                                           jbond@gibsondunn.com
                                           nharper@gibsondunn.com
                                           ahauptman@gibsondunn.com

                                           *Counsel for Plaintiff History Associates
                                           Incorporated*