# Exhibit A

```
 1                IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
 2                              ---
    HISTORY ASSOCIATES,            )
 3  INCORPORATED,                  )
                                   )
 4                                 )  CIVIL NO. 24-1858
                 Plaintiff,        )
 5                                 )  Friday, November 8, 2024
    v.                             )
 6                                 )
    U.S. SECURITIES AND EXCHANGE   )
 7  COMMISSION,                    )
                                   )
 8                                 )
                 Defendant.        )
 9  _____  )

10               TRANSCRIPT OF PRE-MOTION CONFERENCE

11          BEFORE THE HONORABLE JUDGE ANNA C. REYES
                    UNITED STATES DISTRICT JUDGE
12                              ---

13  APPEARANCES:        GIBSON, DUNN & CRUTCHER LLP
                        BY:  JONATHAN BOND
14                           NICK HARPER
                             AARON HAUPTMAN
15                      1700 M. Street NW
                        Washington, DC 20036
16                      (202)815-7303
                        Email: Jbond@gibsondunn.com
17
                        For the Plaintiff
18
                        U.S. SECURITIES AND EXCHANGE COMM.
19                      MARY VERDI
                        MELINDA HARDY
20                      100 F Street, NE
                        Washington, DC 20549
21                      (202)551-5149
                        Email: VerdiM@sec.gov
22
                        For the Defendant
23                              ---

24  COURT REPORTER:     CHANDRA R. KEAN, RMR
                        Official Court Reporter
25                      333 Constitution Avenue, NW
                        Washington, DC 20001
```

14:00:17

1    **PROCEEDINGS**

2    (Court called to order at 1:59 p.m.)

13:59:47  3    DEPUTY COURTROOM CLERK:  This is Civil Action

13:59:49  4    24-1858, History Associates, Incorporated v. U.S.

13:59:54  5    Securities and Exchange Commission.

13:59:55  6    Would the parties please come forward and identify

13:59:57  7    themselves for the record, starting with plaintiff's

14:00:00  8    counsel.

14:00:02  9    MR. BOND:  Good afternoon.  May it please the

14:00:04  10    Court, Jonathan Bond for History Associates.  With me at

14:00:08  11    counsel table is Nick Harper and Aaron Hauptman with

14:00:13  12    Gibson, Dunn & Crutcher.

14:00:13  13    THE COURT:  Good afternoon.

14:00:15  14    MS. VERDI:  Good afternoon, Your Honor.  Mary

14:00:18  15    Verdi for the SEC.  And at the table with me is my

14:00:22  16    supervisor, Melinda Hardy.

14:00:25  17    THE COURT:  Can you stay up for a moment?  I

14:00:26  18    thought the last time you were in front of me we figured

14:00:29  19    this thing out.

14:00:30  20    MS. VERDI:  I don't believe we have appeared

14:00:32  21    before you yet, Your Honor, in this case.

14:00:40  22    MR. BOND:  That's a different case involving

14:00:42  23    the FDIC.

14:00:44  24    THE COURT:  That clears up a lot.

14:00:46  25    So you all, so far as I can tell, got a bunch of

14:01:02  1    documents to respond to this FOIA request.  You took it

14:01:05  2    through the 7(A) analysis?

14:01:08  3           MS. VERDI:  Yes, we did, Your Honor.

14:01:09  4           THE COURT:  Okay.  And -- but you didn't do it

14:01:11  5    on a document-by-document basis.  You kind of just did

14:01:14  6    it in categories.

14:01:15  7           MS. VERDI:  At the time of the determinations,

14:01:16  8    yes, that is true, Your Honor.

14:01:17  9           THE COURT:  Okay.  And now the 7(A) exemption

14:01:19  10   no longer exists because the litigation is over, or the

14:01:22  11   investigation is over or something?

14:01:24  12          MS. VERDI:  The investigations have either

14:01:25  13   ended or other affected proceedings have changed, the

14:01:28  14   status has changed.  And, therefore, we don't believe

14:01:30  15   that 7(A) would apply to a majority of the documents

14:01:32  16   that are responsive.

14:01:33  17          THE COURT:  But what documents would they apply

14:01:34  18   to?  Do you have categories of documents that they would

14:01:37  19   apply to?

14:01:38  20          MS. VERDI:  We have not yet reviewed them to

14:01:41  21   see if there are still 7(A) documents -- or documents

14:01:43  22   that would have 7(A) withholdings appropriate.  And so

14:01:48  23   it is possible that there are certain documents that are

14:01:50  24   responsive that 7(A) would still apply to, but we have

14:01:53  25   not yet determined that.

14:01:54  1          THE COURT:  Okay.  So part of the investigation

14:01:55  2  is still ongoing or why?

14:01:56  3          MS. VERDI:  That's correct, Your Honor, yes.

14:01:58  4          THE COURT:  Okay.

14:02:06  5      I'm not quite sure what to do here because I'm a

14:02:10  6  little bit at a loss as to why you all thought that you

14:02:14  7  could just do a 7(A) analysis on the first go-around and

14:02:18  8  then if that -- I mean, it's going to go away sooner or

14:02:21  9  later -- then do the actually FOIA review.

14:02:23  10     I mean, you don't -- I'm not sure where that came

14:02:26  11 from, but we are where we are.  And I'm not going to

14:02:29  12 give you three years to figure this out.  Like, that's

14:02:32  13 not happening.

14:02:33  14         MS. VERDI:  Understood, Your Honor.  And we are

14:02:35  15 happy to work with the plaintiffs.  We would like to be

14:02:37  16 reasonable and work together to figure out a timeline

14:02:39  17 that makes sense for processing of responsive records.

14:02:42  18         THE COURT:  Well -- okay.  You can be seated.

14:02:48  19     What's your suggested approach?

14:02:50  20         MR. BOND:  So, Your Honor, we suggest that the

14:02:52  21 Court deal with this on two tracks.

14:02:54  22     Now, the only numbers of documents that they've

14:02:56  23 identified for us are the third-party documents that the

14:03:00  24 SEC received that they didn't generate.  They've

14:03:03  25 identified rough numbers of those, of more than 130,000.

14:03:04  1          So our proposal is set those aside.  We'll work

14:03:08  2     with them on a plan for producing and reviewing those on

14:03:10  3     a rolling basis.  But the other documents, the ones that

14:03:12  4     the SEC itself generated, we think we should be prepared

14:03:16  5     to litigate now.

14:03:17  6          And so the SEC, we suggest, should get a certain

14:03:20  7     amount of time to prepare its Vaughn Index for those

14:03:20  8     remaining documents --

14:03:20  9               THE COURT:  Whoa, you need to slow way down --

         10               MR. BOND:  Sure.

14:03:22 11               THE COURT:  -- because I'm having trouble

14:03:25 12     keeping up, and so then the court reporter is having

14:03:25 13     trouble keeping up.

         14               MR. BOND:  Absolutely.

14:03:25 15               THE COURT:  Okay.  Start again.

14:03:27 16               MR. BOND:  Absolutely.  So there are the two

14:03:29 17     sets of documents.  The only set that the SEC has

14:03:33 18     quantified are the third-party documents produced or

14:03:35 19     provided to the SEC but generated by third parties.

14:03:39 20          They've told us --

14:03:39 21               THE COURT:  What FOIA exception would there be

14:03:41 22     for that anyway?

14:03:43 23               MR. BOND:  It's not at all clear to us what

14:03:45 24     those -- what exception would apply to those, and all

14:03:47 25     they've asserted is 7(A), so it's kind of a mystery to

14:03:51  1    us.  But their point is there are so many documents, it

14:03:54  2    will take a really long time to review them.

14:03:57  3        So our suggestion is, let's work with them on a

14:03:58  4    rolling production of those documents.  But meanwhile,

14:03:59  5    the documents that the SEC itself generated, we think

14:04:03  6    they should be in a position to produce the Vaughn Index

14:04:06  7    so that we can move forward with summary judgment on any

14:04:09  8    where we're not satisfied with the Index, just like Your

14:04:12  9    Honor ordered in the FDIC case.

14:04:17  10        THE COURT:  What kind of documents are those

14:04:18  11    with the SEC?  Would those have been the letters that

14:04:20  12    they wrote or --

14:04:21  13        MR. BOND:  So we've requested communications by

14:04:24  14    the SEC to third parties, public communications,

14:04:28  15    internal files that would not be exempt.  There are --

14:04:31  16    we have three requests at issue.  The one for Ethereum

14:04:33  17    is not even about an investigation.  It's about --

14:04:36  18        THE COURT:  You have to slow down.  I'm having

14:04:37  19    trouble keeping up.

14:04:38  20        MR. BOND:  Sorry.  Apologies, Your Honor.

14:04:40  21        THE COURT:  No, it's fine.

          22        MR. BOND:  Yeah.  The --

14:04:42  23        THE COURT:  Okay.  What kind of documents does

14:04:43  24    the SEC have?  The documents that they sent to third

14:04:47  25    parties?

14:04:47  1          MR. BOND:  It would include documents sent to

14:04:49  2    third parties.

14:04:49  3          THE COURT:  Okay.  And what else?

14:04:50  4          MR. BOND:  We've asked for any documents the

14:04:52  5    SEC has that relate to the switch for Ethereum from

14:04:55  6    proof of work to proof of stake, which happened in 2022.

14:04:59  7          THE COURT:  Well, aren't those going to be

14:05:01  8    protected by some deliberative privilege?

14:05:03  9          MR. BOND:  Some might, but we're not limiting

14:05:06  10   our request to the SEC's policy with respect to those,

14:05:08  11   just documents that the SEC possesses, that it

14:05:11  12   generated, including communications to third parties

14:05:13  13   that the SEC made.  Also, you know, public statements

14:05:16  14   that the SEC might have made -- the Chair has made

14:05:19  15   speeches about this.

14:05:20  16       So we know that some documents exist.  We don't

14:05:22  17   know what they are because the SEC hasn't told us

14:05:24  18   anything about the content of the documents.  When we

14:05:26  19   first made the request, they said they had zero

14:05:28  20   responsive documents.  And then when we filed our

14:05:31  21   appeal, they said they have some unknown number of

14:05:35  22   documents, but all of them are exempt under 7(A).

14:05:37  23       Now, we don't think that can be right.  And so we

14:05:39  24   think the right approach moving forward is for the SEC

14:05:42  25   to produce a Vaughn Index, identify what the documents

14:05:46  1    are, how many there are, and what exemptions they want

14:05:49  2    to assert.  And then we can move forward with summary

14:05:52  3    judgment briefing.

14:05:52  4          THE COURT:  If they're public, can't you just

14:05:52  5    Google -- I mean, can't I just get on Google right now

14:05:54  6    and figure out what they've said or done or -- I mean,

14:05:56  7    if it's public, I'm not sure that that's really what you

14:05:57  8    want them focused on.

14:05:59  9          MR. BOND:  Well, the public ones are not the

14:06:00  10   principal focus, but the point is they are included

14:06:03  11   within the scope of the request.  But documents that

14:06:05  12   they've sent to third parties that are not privileged, I

14:06:07  13   think they should have to produce.  And at a minimum, we

14:06:10  14   should be able to litigate with them any arguments they

14:06:13  15   might have about the documents that they've sent to

14:06:16  16   third parties.

14:06:16  17         THE COURT:  Okay.  All right.

14:06:18  18    Can I see you again?

14:06:23  19    The 130,000 documents that are documents from third

14:06:28  20   parties, are those like briefs or letters that they've

14:06:30  21   sent you or are those just, like, you know, documents

14:06:34  22   that otherwise existed and they just picked up and sent

14:06:36  23   to you?

14:06:38  24         MS. VERDI:  I'm not sure I can answer that

14:06:42  25   question specifically, Your Honor.  My understanding is

14:06:44  1    that those are records that third parties provided in

14:06:49  2    response to subpoenas, but SEC enforcement officers sent

14:06:53  3    them.  And as a result --

14:06:54  4            THE COURT:  What privilege would there be over

14:06:55  5    those?

14:06:56  6            MS. VERDI:  Exemption 4.  It is possible -- so

14:06:59  7    there are over 130,000 pages of records produced only by

14:07:02  8    third parties that we would have to look at to find out

14:07:04  9    if there would be any exemption for withholdings

14:07:07  10   appropriate.

14:07:22  11           THE COURT:  And how many of the other types of

14:07:24  12   documents do you all have?

14:07:25  13           MS. VERDI:  So the requests are extremely

14:07:29  14   broad.  The requests are for all records relating to two

14:07:33  15   parties:  Enigma MPC and Zachary Coburn.  It's not

14:07:38  16   limited in any way.

14:07:38  17       And then the third FOIA request at issue seeks

14:07:42  18   records about the Ethereum shift of proof -- and my

14:07:48  19   understanding is that is a very broad request is for any

14:07:52  20   document about that issue within the SEC.

14:07:54  21       And so as a result, we would have to speak with

14:07:58  22   enforcement staff and other staff within the SEC to

14:08:00  23   determine the volume of every record that could be

14:08:03  24   responsive to these very broad requests.

14:08:05  25           THE COURT:  Well, why hasn't that already

14:08:07   1   happened?  I mean, how long has this been pending?

14:08:09   2           MS. VERDI:  Our determinations were sent out in

14:08:11   3   connection with these three requests I believe in

14:08:13   4   December 2023 and January and February of 2024.

14:08:16   5           THE COURT:  So why haven't you already looked

14:08:17   6   into how many documents are responsive?  I'm just

14:08:21   7   confused as to what we're doing here in November.

14:08:24   8   Nothing, so far as I can tell, has happened other than

14:08:27   9   that you said, "Oh, 7(A) applies."

14:08:29  10       Magic wand.  We don't have to do anything else.

14:08:32  11       I mean, so far as I can tell, that's what has

14:08:33  12   happened.

14:08:33  13           MS. VERDI:  So at the time that we sent our

14:08:35  14   responses to the FOIA request and our responses to

14:08:38  15   History Associates' appeal to those responses to the

14:08:41  16   FOIA requests, 7(A) applied broadly to records

14:08:44  17   responsive to these requests.

14:08:44  18           THE COURT:  Okay.  But you know 7(A) at some

14:08:45  19   point is going to be extinguished, right?

14:08:48  20           MS. VERDI:  Yes, Your Honor.

14:08:49  21           THE COURT:  Okay.  So on what basis did you all

14:08:52  22   think to yourselves:  "You know what?  We're just going

14:08:52  23   to kick this can down the road"?

14:08:52  24           MS. VERDI:  Our determination at the time was

14:08:53  25   based on that moment in time.  And the FOIA --

14:08:55  1          THE COURT:  No, I understand that at that

14:08:58  2    moment in time you thought 7(A) applied, right?

14:09:00  3          MS. VERDI:  Yes, Your Honor.

14:09:01  4          THE COURT:  But that moment of time you knew

14:09:03  5    that at some point 7(A) would be extinguished.

14:09:06  6          MS. VERDI:  Yes, Your Honor.  But our

         7    obligation --

         8          THE COURT:  Okay.  So, so --

14:09:08  9          MS. VERDI:  Excuse me, sorry.

14:09:08  10         THE COURT:  No, it's fine.  So why did you all

14:09:09  11   think it was okay to just say 7(A) writ large, and then

14:09:13  12   whenever that investigation ends, then we'll actually

14:09:15  13   start the actual review?

14:09:16  14         MS. VERDI:  Our obligation under the FOIA is

14:09:19  15   not to continue to respond to FOIA requests and provide

14:09:22  16   updates to FOIA requests.  My understanding is that

14:09:23  17   typically when requests to seek records that are

14:09:26  18   withheld in full under 7(A) --

14:09:26  19         THE COURT:  Both of you need to slow -- I don't

14:09:29  20   know what's going on today, but -- am I, like, being

14:09:31  21   overly sensitive here?

         22         MS. VERDI:  I apologize.

         23         THE COURT:  Okay.  I don't know what is going

14:09:35  24   on today, but, like, if I'm having trouble keeping up

14:09:36  25   with both of you, something is going -- like, you guys

14:09:38  1    are talking way too fast.  Because I'm a very fast

14:09:41  2    talker, so it's not usually a problem for me.  So let's

14:09:45  3    all try to slow down.

14:09:46  4        So your view is at a moment in time that's when we

14:09:51  5    respond to FOIA.  And if 7(A) extinguishes at some other

14:09:56  6    point in time, then it's up to them to update their FOIA

14:09:58  7    request.

14:09:58  8            MS. VERDI:  Yes.  Or at the time -- so now --

14:10:00  9    so as of February 2024 at the latest, we determined 7(A)

14:10:04  10   applied to everything.  Plaintiff filed their lawsuit in

14:10:07  11   June, and we said, okay, 7(A) does not apply, we think,

14:10:12  12   to the majority of the records, so let's work together

14:10:14  13   to figure out a workable volume of records that we can

14:10:17  14   process and make determinations about.

14:10:20  15       And that's where we are now, I believe, Your Honor.

14:10:24  16           THE COURT:  How long is it going to take you

14:10:26  17   all to get a Vaughn Index together, putting aside the

14:10:30  18   130,000 documents?

14:10:31  19           MS. VERDI:  Of every record responsive to the

14:10:36  20   FOIA request?

14:10:37  21           THE COURT:  I don't know -- whatever you need

14:10:38  22   to do to put a Vaughn Index together.  I don't know.

14:10:41  23           MS. VERDI:  I think it would take us an

14:10:42  24   extremely long time if there's over 130,000 records.

14:10:45  25           THE COURT:  The Vaughn Index doesn't usually go

14:10:48  1    record by record, does it?

14:10:49  2          MS. VERDI:  For a categorical Vaughn Index, we

14:10:52  3    still need to ascertain the entire volume of all the

14:10:54  4    records responsive to their requests, which is going to

14:10:56  5    be thousands and thousands of records.  And reviewing

14:10:59  6    them and filing them will take a considerable amount of

14:11:02  7    time.

14:11:02  8          THE COURT:  Okay.  You can be seated.

14:11:04  9    Can I see you again?

14:11:05  10   What documents do you actually -- what do you

14:11:07  11   really -- like what is the core of what you actually

14:11:10  12   got?

14:11:10  13   Because here's the thing:  You have very broad FOIA

14:11:14  14   requests, right?  And if you want to stand on those

14:11:17  15   broad FOIA requests, by all means.  But then it's going

14:11:20  16   to be -- you know, I'm going to be retired on a beach

14:11:23  17   somewhere before you get the Vaughn Index, it sounds

14:11:26  18   like.

14:11:26  19   Now, what are the documents that you actually, at

14:11:28  20   core, want?  Because I can order her to look at those

14:11:33  21   documents first, but if she's telling me that she's

14:11:36  22   going to have to review every, you know, document that

14:11:38  23   ever existed from any tree in the world, it's going to

14:11:41  24   be a while.

14:11:42  25         MR. BOND:  So I'd say two things:  First, of

14:11:45  1    course, it's difficult for us to know exactly what

14:11:48  2    documents they have because --

14:11:50  3         THE COURT:  But you guys want to know -- you

14:11:52  4    guys want to know what laws or what regulations are

14:11:55  5    going to -- or are dealing with digital currencies?

14:12:00  6         MR. BOND:  I think the principal issue on the

14:12:03  7    main request regarding Ethereum is that Ethereum went

14:12:08  8    through this change from one form of validation to

14:12:10  9    another.  The Chair has suggested that that has some

14:12:12  10   bearing on its classification as a security or not, and

14:12:15  11   has never explained that.  And we're trying to get to

14:12:17  12   the bottom of what's going on.

14:12:19  13        THE COURT:  Okay.  What -- there must be some

14:12:21  14   set of documents that explain that without you having to

14:12:25  15   go through everything.

14:12:29  16      Why don't you both come up for a bit.

14:12:34  17      Do you agree that the director -- is this something

14:12:36  18   that the director has said publicly?

14:12:38  19        MR. BOND:  I believe he has made public

14:12:40  20   statements about the relevance of this change, but he

14:12:42  21   has not explained what about the change from one method

14:12:45  22   to another bears on its classification as a security.

14:12:48  23        THE COURT:  Okay.  That doesn't seem like a ton

14:12:50  24   of documents.  Why can't we just get with the director's

14:12:53  25   office and see what he meant?

14:12:55   1          MS. VERDI:  I think we would be open to

14:12:56   2    narrowing that request to that sort of much smaller

14:13:02   3    corpus of records.

14:13:03   4          THE COURT:  Okay.  What else?

14:13:04   5          MR. BOND:  So I think we're looking not just

14:13:06   6    for statements concerning the director's mindset but

14:13:08   7    what the agency has been thinking and saying to third

14:13:11   8    parties or internally about this development.

14:13:13   9      We don't know what's been said.  We don't know how

14:13:15   10   many documents --

14:13:16   11         THE COURT:  Okay, but -- look, look, look,

14:13:23   12   look.  Look, if you want anything that's been said about

14:13:27   13   it, that's fine, but you're not going to get anything

14:13:29   14   for quite a while.

14:13:30   15     If we -- why don't we start with a subset of --

14:13:34   16   have her focus first on what information the director

14:13:40   17   has given to his subordinates about this issue or what

14:13:46   18   information the director considered in issuing those

14:13:51   19   public responses.  Why don't we start there and see if

14:13:53   20   that gives us a roadmap to ask for more specific

14:13:56   21   documents?

14:13:57   22     That, I can have them do very quickly.  If you want

14:14:00   23   everything else that -- I'm going to give them more

14:14:04   24   time.

14:14:05   25         MR. BOND:  I think we would be open to that as

14:14:06  1    an initial step without prejudice to fighting over --

14:14:09  2         THE COURT:  Of course.

14:14:10  3         MR. BOND:  Once we learn, as you say, what --

14:14:11  4    you know, we can make a roadmap once we've seen what's

14:14:14  5    there.  But I think, at a minimum, we would need to

14:14:16  6    start with that.

14:14:17  7         THE COURT:  Okay.  All right.  What else at a

14:14:18  8    minimum is at the core of what you want?

14:14:20  9         MR. BOND:  I think if there are any

14:14:22  10   communications that the SEC has sent to third parties

14:14:24  11   about that issue, I think that should be an easy thing

14:14:27  12   for them to identify.

14:14:27  13        THE COURT:  That seems like an easy thing for

14:14:29  14   you all to identify.

14:14:30  15       What if we just start with those two?  I will give

14:14:33  16   you two months to put together the Vaughn Index on those

14:14:39  17   categories of documents.  Then after you get the Vaughn

14:14:41  18   Index and the documents, you tell me -- you guys send me

14:14:45  19   a joint status report after you've had a chance to

14:14:47  20   review them and then we'll go from there.

14:14:51  21       Yes?

14:14:51  22        MR. BOND:  Yes.

14:14:52  23        MS. VERDI:  I think that's workable, Your

14:14:54  24   Honor.  Thank you.

14:14:54  25        THE COURT:  Okay.  Why don't you send them a

14:15:00  1    letter that says -- that's stated on the record without

14:15:03  2    prejudice to arguments down the road and without

14:15:06  3    narrowing the FOIA request, as an initial step:  We

14:15:09  4    would like the documents that the director considered,

14:15:17  5    documents regarding the basis for the change and what

14:15:22  6    the thinking -- or what -- the reason for the change at

14:15:24  7    the director level, and then any -- any correspondence.

14:15:33  8         Let's start with a letter correspondence from the

14:15:38  9    agency to third parties about this issue.  And identify

14:15:40  10   the issue so that she knows exactly what she's looking

14:15:43  11   for.

14:15:44  12             MR. BOND:  Understood.

14:15:45  13             THE COURT:  Do not do what every lawyer in

14:15:47  14   America is inclined to do when they send out a request.

14:15:50  15   Do not make this broader by adding catchall phrases or

14:15:55  16   words or whatnot than what we're envisioning here, okay?

14:15:58  17        I just want you to put on paper what we are

14:16:02  18   envisioning, which is an initial, small subset of things

14:16:05  19   so that she can get working on that quickly and you can

14:16:07  20   get something quickly to start chewing over.  And then

14:16:10  21   you can decide what more you need.  All right?

14:16:17  22             MR. BOND:  Understood.

          23             THE COURT:  Okay.

14:16:19  24        All right?

14:16:19  25             MS. VERDI:  Your Honor, that sounds like a

1    workable way forward for now -- oh, excuse me.  I'm so

2    sorry.

14:16:20  3         And I just want to say that, you know, I have no

14:16:23  4    sense whether there are records that are responsive to

14:16:25  5    this, if they exist or what it will look like, but we

14:16:28  6    will conduct a search for the records that --

14:16:30  7              THE COURT:  Okay.  Well, I want something to

14:16:31  8    actually get to him within 60 days.  If there are

14:16:34  9    documents that -- if there are no documents, you can say

14:16:36  10    there are no documents.

11              MS. VERDI:  Sure.

14:16:36  12              THE COURT:  And then you guys can try to figure

14:16:38  13    out another small subset of something, right?

14:16:40  14         But you know what he wants.  He wants to figure out

14:16:44  15    the basis for the change, I suppose, so that your

14:16:46  16    clients could -- or so that companies can know what's

14:16:49  17    coming down the pike and why it's happening.

14:16:51  18         Right?

14:16:52  19              MR. BOND:  That's right.

14:16:54  20              THE COURT:  Okay.  At the end of the day that's

14:16:55  21    what he wants.

14:16:56  22         So you guys work together.  If this first step

14:16:57  23    doesn't work out, you guys try to figure out some way to

14:16:59  24    get him what he wants without having to look at every

14:17:03  25    document ever created on this issue.

14:17:05    1          Okay?

14:17:05    2               MR. BOND:  And if I could just add, you know,

14:17:07    3    one thing on the Vaughn Index itself that they're going

14:17:08    4    to produce, it would be, I think, appropriate and very

14:17:10    5    helpful if it identifies whatever exemptions they would

14:17:12    6    intend to assert as to those documents so that we get

14:17:14    7    this, you know, once -- once for all.

14:17:16    8               THE COURT:  Good?

14:17:17    9               MS. VERDI:  We fully intend to do that, yes.

14:17:19   10               THE COURT:  Perfect.  All right.  Good luck.

14:17:22   11          (Court in recess, 2:17 p.m.)

           12

14:55:54   13

           14

           15

           16

           17

           18

           19

           20

           21

           22

           23

           24

           25

1

2                        CERTIFICATE

3

4        I, Chandra Kean, RMR, certify that the foregoing is

5   a correct transcription from the record of proceedings

6   in the above-titled matter.

7

8

9   _____        November 13, 2024
        Chandra Kean, RMR                  DATE
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25